IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRAFTWOOD II, INC., a California corporation, d/b/a Bay Hardware; CRAFTWOOD III, INC., a California corporation, d/b/a Lunada Bay Hardware, individually and as representatives of all others similarly situated, ) ) ) ) ) ) Plaintiffs, ) v. ) ) GENERAC POWER SYSTEMS, INC., a Wisconsin ) corporation; COMPREHENSIVE MARKETING, INC., ) an Illinois corporation, ) ) Defendant. ) | Case No.   17 C 4105<br><br>Judge Robert W. Gettleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Craftwood II, Inc., d/b/a Bay Hardware and Craftwood III, Inc., d/b/a Lunada Bay Hardware, have brought a one count putative class action complaint against defendants Generac Power Systems, Inc. and Comprehensive Marketing, Inc. ("CMI") alleging that defendants have violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Relying on Spokeo, Inc. v. Robins, __ U.S. __, 136 S.Ct. 1540 (2016), defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(1), arguing that plaintiffs lack standing because they have suffered no concrete injury that is fairly traceable to the alleged violation, or one that is redressable by a favorable decision.

Plaintiffs are two entities that sell hardware in California. They allege that during the four years preceding the filing of the instant complaint, defendants violated the TCPA by sending unsolicited facsimile advertisements to plaintiffs' telephone facsimile machines. The

complaint does not allege the number of faxes each plaintiff received, but does attach three such faxes as exhibits.

Defendants argue that plaintiffs lack standing under Article III of the Constitution, which limits federal judicial power to certain cases or controversies. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Article III standing has three elements: (1) the plaintiff must have suffered an injury in fact, an invasion of a legally protectable interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury must be fairly traceable to the challenged action of the defendant; and (3) it must be redressable by a favorable decision. Id. at 560-61.

In Spokeo, the Supreme Court explained that concrete and particularized are separate and distinct concepts, and that both must exist for standing. Spokeo, 136 S.Ct. at 1548-50. To be concrete the injury must be "de facto," meaning it must actually exist. Id. at 1548. "When we have used the adjective 'concrete' we have meant to convey the usual meaning of the term – 'real' and not 'abstract.'" Id. "'Concrete' is not, however, synonymous with 'tangible.'" Id. at 1549. The court noted that both history and the judgment of Congress play important roles in determining whether an intangible injury constitutes an injury in fact. Id. But even though "Congress may elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law," a plaintiff does not automatically satisfy the "injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." Id. Thus, plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." Id.

The point the court was making in Spokeo is not that a statutory violation cannot constitute an injury in fact, but "that where the bare violation of a statute conferring a procedural right could cause a congressionally identified harm or material risk of harm and just as easily could not, it is not sufficient simply to allege that the statute at issue was violated." A.D. v. Credit One Bank, N.A., 2016 WL 4417077, *6 (N.D. Ill. Aug. 19, 2016).

"In ruling on a Rule 12(b)(1) motion, the court may look outside of the complaint's allegations and consider whatever evidence has been submitted on the issue of jurisdiction." Mutter v. Madigan, 2014 WL 562017, *2 (N.D. Ill. Feb. 13, 2014); Ezekiel v. Michel, 66 F.3d 894, 897 (7th Cir. 1995). "Indeed, the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Pollack v. U.S. Dept. of Justice, 577 F.3d 736, 745 (7th Cir. 2009).

The TCPA, 47 U.S.C. § 227(b)(1)(C), prohibits the use of a telephone fax machine to send an unsolicited advertisement to another telephone fax machine unless the unsolicited advertisement is from a sender with an established business relationship with the recipient and the fax contains an opt-out notice. In support of their motion, defendants have submitted ample evidence of an established business relationship between plaintiffs and defendants, including fax orders from plaintiffs to CMI, all of which provide plaintiffs' fax number and ask that confirmation of the orders be faxed back to plaintiff. In addition, defendants have provided emails from Diana Brunjes Newton of plaintiff to CMI discussing previous orders. It is uncontestable that plaintiffs voluntarily gave their fax numbers to defendants within the context of an established business relationship.

Thus, because the parties had an established business relationship, plaintiffs are reduced to arguing that the fax advertisements that they received did not contain the statutorily mandated opt-out language. The TCPA requires an opt-out notice to: (1) be clear and conspicuous on the first page of the advertisement; (2) state that the recipient may request not to receive additional facsimile advertisements and that failure to comply within a reasonable time is unlawful; (3) a cost free mechanism for a recipient to transmit the request to the sender at any time; (4) and other procedural requirements not relevant to the instant case.

The instant fax advertisements all contain the following language on the bottom of the first page:

Confidentiality Notice

The information in this facsimile message is privileged and confidential information, intended for the addressee. If you have received this message in error, or if the recipient of this communication does not desire to receive future communications from the sender, The recipient must notify the sender of the same with a return fax to 630-916-0735 or call Toll Free 1-877-325-2526.

Plaintiffs acknowledge that each advertisement contains the above opt-out language, but argue that the language is not compliant with the statute's mandate because it does not tell the recipient that it has a legal right to opt out and that failure to comply within 30 days in unlawful. Even if plaintiffs are correct, they have failed to identify any injury as a result of these possible technical violations. The whole point of the opt-out requirement is to provide the recipient with a means to tell the sender to stop sending advertisements. Here, it is uncontested that Mr. Brunjes, plaintiffs' owner, called defendant CMI and indicated that he was calling on behalf of all Craftwood Stores, that he thought the opt-out notice was not compliant with the TCPA, and that plaintiffs did not want to receive further fax advertisements from CMI. Plaintiffs have

presented no evidence nor do they even allege that they have received any facsimiles from defendants after that call. Consequently, plaintiffs have presented no evidence to suggest that they have been injured in any manner by any possible technical or procedural violation. As a result, they lack standing to bring their claim for a violation of the TCPA. Defendants' motion to dismiss (Doc. 46) is granted.

**ENTER:   August 1, 2018**

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　**Robert W. Gettleman**
　　　　　　　　　　　　　　　　　　　**United States District Judge**

5