IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRAFTWOOD II, INC., a California corporation, d/b/a Bay Hardware; CRAFTWOOD III, INC., a California corporation d/b/a Lunada Bay Hardware, individually and as representatives of all others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.  17 C 4105 |
| v. | ) ) | Judge Robert W. Gettleman |
| GENERAC POWER SYSTEMS, INC., a Wisconsin corporation, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiffs Craftwood II, Inc., d/b/a Bay Hardware, and Craftwood III, Inc., d/b/a Lunada Bay Hardware have filed a one-count putative class action complaint against defendant Generac Power Systems, Inc. ("Generac"), alleging a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for the three "junk" faxes. Defendant has moved for summary judgment, arguing that plaintiffs consented to the faxes. (Doc. 251). For the reasons stated below, defendant's motion is granted, and plaintiffs' motion to strike (Doc. 270) is denied.

**BACKGROUND**

When plaintiffs Bay Hardware and Lunada Bay Hardware opened their stores in 2009 and 2013, respectively, they applied to join Do It Best ("DIB"), a hardware industry cooperative and wholesaler. Joining DIB gives hardware stores access to cheaper goods from certain vendors, promotional materials, as well as advertising and buying assistance. To join the cooperative, each member store must complete a Membership Agreement. The Agreement

states that DIB "agrees to sell its goods and provide its advertising programs, training services and other programs to Member (so long as Member makes timely payment therefore) at [DIB's] established prices, terms, and conditions…." The Agreement later has a section for the applicant to provide contact information, including a fax number. The Agreement does not explicitly ask the member to give permission for fax ads. Both Bay Hardware and Lunada Bay completed the membership agreement and provided their fax numbers.

In addition to specialized pricing, DIB provides an "Ad-Pak program," which is an optional advertising program to help member hardware stores with their outbound promotions to customers. Although the description of the program is somewhat unclear, it appears that DIB's vendors would send promotions to the member hardware stores, which in turn would then pass on those promotions to their customers. Both Bay Hardware and Lunada Bay Hardware opted into the Ad-Pak program.

Comprehensive Marketing Inc. ("CMI") represents vendors in DIB, such as defendant Generac. CMI serves as an independent sales representative and sends promotions to DIB members on behalf of DIB vendors, often via fax. Vendors like defendant would provide CMI with copes of the subject faxes, and CMI would send the faxes to the DIB members. The three faxes of which plaintiffs complain were sent by CMI on behalf of Generac.[1] Defendant claims that at least one of these faxes was through the Ad-Pak program—that is, defendant sent a promotion to Bay Hardware for Bay Hardware to send to its customers.

---

[1] CMI sent two faxes to Bay Hardware, the first on July 28, 2016, and the second on February 13, 2017. CMI sent one fax to Lunada Bay Hardware on February 13, 2017. Plaintiffs contend that CMI and Generac sent more than these faxes, but these are the only three identified in plaintiffs' complaint. CMI was originally a defendant in this suit but was dismissed by plaintiffs on December 27, 2019. (Doc. 205).

2

Defendant further asserts that in May 2012, a representative of CMI, Sheri Davis, called Craftwood II and obtained the fax number for Bay Hardware along with express permission to send fax advertisements. At the time, Davis was calling member stores to ask permission to send promotional faxes. She kept track of these calls in a spreadsheet, where she also noted which DIB members provided fax numbers and consented to receive fax promotions. Davis would note whether the member did not want ads at all, or whether it wanted ads from certain vendors and not others. For Bay Hardware, Davis's spreadsheet has no qualifying notations. It merely states the fax number which means, defendant argues, that Bay Hardware gave full permission to receive fax ads from CMI. Davis did not call the Lunada Bay Hardware store when making these calls in 2012, because it was not yet in existence.

During her deposition, Davis also testified that DIB expected CMI to send fax promotions and fax advertisements to DIB's members. She testified that CMI "told" her this on many occasions, that it was common practice, and that DIB generally expected that CMI would send faxes to DIB members. Davis further testified that, beginning in 2016, DIB would send CMI its own member fax list, with the expectation that CMI would send faxes to those members.

Plaintiffs contest nearly all of Davis's testimony, focusing on her credibility and lack of memory (she can't remember who she spoke to, or their race or gender), and raising hearsay objections, discussed below. Plaintiffs also point to the testimony of Craftwood's president and owner, David Brunjes, who claimed that he hates fax promotions and would have never consented to them, and that he has no recollection of Davis's phone call. Brunjes claimed that

3

both Lunada Bay Hardware and Bay Hardware have strict policies against giving permission to receive fax ads.[2]

The parties also contest the relationship between the two plaintiffs. Plaintiffs note that Lunada Bay Hardware and Bay Hardware are "affiliated," but claim that they are separate entities, separate corporations, and that one's actions do not affect the other. Defendant argues that plaintiffs have the same corporate address, are owned by the same individuals, one has placed orders for the other, and that the owners have operated the stores as a single unit. Davis testified that CMI assumed plaintiffs were a "three store chain" based on the way Brunjes and the stores operated.

## **DISCUSSION**

Summary judgement is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." Brummett v. Sinclair Broadcast Group, Inc., 414 F.3d 686, 692 (7th Cir. 2005). When considering a motion for summary judgment, the court must construe the evidence and make all reasonable inferences in favor of the non-moving party. Hutchinson v. Fitzgerald Equip. Co., Inc., 910 F.3d 1016, 1021 (7th Cir. 2018). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are the jobs for a factfinder." Johnson v. Advocate Health and Hospitals Corp., 982 F.3d 887, 893 (7th Cir. 2018).

---

[2] It is undisputed that at some point after CMI sent the subject faxes, Brunjes called CMI and said he did not wish to receive faxes.

I.      Local Rule 56.1

As a preliminary matter, both plaintiffs' and defendant's summary judgment pleadings violate Local Rule 56.1. Local Rule 56.1 is intended to simplify matters and make the court's job "easier," Portis v. City of Chi, 510 F.Supp.2d 461, 463 (N.D. Ill. 2007), by "identify[ing] for the court the evidence supporting a party's factual assertions in an organized manner." Aberman v. Bd. of Edu. of City of Chi., 242 F.Supp.3d 672, 676 (N.D. Ill. 2017). In this case, it appears that the parties "intended to complicate rather than simplify the court's task." Portis, 510 F.Supp.2d at 463.

For example, both plaintiffs and defendant quibble over facts that should be straightforward admissions or denials. Plaintiffs filed a lengthy response to defendant's statement of facts that includes detailed legal arguments that have no place in a Local Rule 56.1 statement. See Aberman, 242 F.Supp.3d at 676 (Local Rule 56.1 statement "is not intended as a forum for factual or legal argument"). In addition to their response, Plaintiffs filed a motion to strike certain portions of defendant's Local Rule 56.1 statement that contest the relevance of basic facts, complains that individuals testifying about their own knowledge lack foundation, makes lengthy hearsay objections, and argues that defendant raises improper legal conclusions (plaintiffs do this as well). The motion to strike does little to advance plaintiffs' position and serves to complicate rather than simplify. Although the court declines to strike the inappropriate portions of both parties' Local Rule 56.1 statements and declines to treat improper denials as admissions, the court will consider the Local Rule 56.1 statements only to the extent they are supported by the record and comply with the Local Rule. Plaintiffs' motion to strike (Doc. 270) is denied.

In addition, defendant's briefs improperly cite to raw record materials rather than to its Local Rule 56.1 statement, which is a blatant violation of the local rules. That violation alone is enough to deny defendant's motion for summary judgment. See Sledge v. Bellwood Sch. Dist. 88, 2011 WL 2457920, at *2 (N.D. Ill. June 17, 2011) (denying summary judgment motion based on movant's violation of Local Rule 56.1); Daoust v. Abbott Labs., 2006 WL 2711844, at *4 (N.D. Ill. Sept. 19, 2006) ("Citing directly to the record in the memorandum statement of facts as [the movant] does here, rather than citing to its 56.1(a)(3) statement, negates the purpose of the summary judgment exercise."). The court will, however, in its discretion exercise leniency and consider the merits of defendant's motion.

## II. Summary Judgment Motion

The TCPA prohibits "unsolicited" fax advertisements. 47 U.S.C. § 227. The statute defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). The Seventh Circuit has said that "prior express permission is not an element of a TCPA offense," but is rather an affirmative defense on which defendant bears the burden. Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC, 950 F.3d 959, 964-65 (7th Cir. 2020). Defendant moves for summary judgment on that affirmative defense.

Defendant argues that it is entitled to summary judgment because plaintiffs gave prior, express permission to receive the faxes. The Seventh Circuit has said that "[e]xpress permission to receive a faxed ad requires that the consumer understand that by providing a fax number, he or she is agreeing to receive fax advertisements." Physicians Healthsource, 950 F.3d at 965. In

6

CE Design Ltd. v. King Architectural Metals, Inc., 637 F.3d 721, 725-28 (7th Cir. 2001), the Seventh Circuit "suggest[ed] that a firm that affirmatively publishes its fax number in a trade publication has granted express permission to members of that trade association." Physicians Healthsource, 950 F.3d at 965; see also Travel 100 Grp. v. Mediterranean Shipping Co., 338 Ill.App.3d 149 (2008) (holding that a travel agency provided its express permission to receive faxes from affiliates of an industry network it had joined). And in Physicians Healthsource, the Seventh Circuit explained (950 F.3d at 967).

> A consumer's statement that it gave permission to send 'product information' via fax, even on an ongoing basis, after purchasing products or services from a company cannot as a matter of law constitute prior express permission. (It would be different if the affidavits explicitly suggested that the consent included promotional materials or product information regarding products or services not yet purchased.) [Emphasis added].

The situation identified by the Seventh Circuit is precisely the situation here. Both plaintiffs enrolled in a cooperative (DIB), the purpose of which was to help plaintiffs navigate relationships with third party vendors like defendant. The agreement explicitly stated that DIB "agrees to sell its goods and provide its advertising programs, training services and other programs to Member…." Advertising services and promotional materials were specifically contemplated and addressed by the Member Agreement, and plaintiffs opted into the Ad-Pak program.[3] Further, plaintiffs provided their fax numbers at the end of the agreement. The very benefit of the agreement is that DIB vendors would send promotional materials to members like plaintiffs, and

---

[3] Plaintiffs argue that the "advertising services" in the Member Agreement means the "Ad-Pak program," which was intended to provide ads for DIB members to send to their customers. Thus, plaintiffs argue, they did not consent to receive fax ads targeted at them as opposed to their customers. This argument does little to support plaintiffs' position because at least one of the faxes was clearly the type contemplated by the Ad-Pak program. Exhibit 1 to plaintiffs' complaint includes an ad that addresses the end customer and would thus be squarely within the Ad-Pak program.

7

by providing their fax numbers plaintiffs' invited those promotions to come by fax.[4] No reasonable jury could conclude that the faxes were unsolicited.

Other cases have followed a similar principle, including <u>Gorss Motels, Inc. v. American Hotel Register Company</u>, 2020 WL 4430563 at *5-6 (N.D. Ill. July 31, 2020), and <u>Gorss Motels, Inc. v. Safemark Systems, LP</u>, 931 F.3d 1094 (11th Cir. 2019). Both cases involved a plaintiff hotel entering into a franchise agreement with Wyndham that provided for third-party vendors to send sales and product information by fax to the members of the franchise. After receiving fax advertisements from the third-party vendors, plaintiffs filed suit. In the latter case, the Eleventh Circuit explained (931 F.3d at 1101):

> Our inquiry focuses on whether a 'consumer [would] understand that by providing a fax number, he or she is agreeing to receive fax advertisements. True, the hotels' agreements did not use the words 'faxed advertisements.' But the franchise agreements contemplated that the hotels could receive 'optional assistance' with 'purchasing items' from Wyndham and its affiliates. A reasonable consumer would understand that assistance with purchasing items entails receiving information about buying products, and an advertisement is by definition an 'act of informing,' which includes 'the promotion of goods and services.' And the hotels would have to receive this optional assistance with purchasing items—that is advertisements—by some medium. By providing their fax numbers in their agreements, the hotels invited the assistance or advertisements to come by fax. The combination of these two provisions in the franchise agreement does not amount to implied permission; it establishes that the hotels 'clearly and unmistakably granted by actions or words' permission for [defendant vendor] to send them faxed advertisements. [Citations omitted].

In the Northern District of Illinois's case involving Gorss Motels, the court found the Eleventh Circuit's reasoning persuasive and followed it, 2020 WL 4430563. This court agrees

---

[4] The parties dispute whether consent can be transferred from one entity to another, but those arguments miss the mark. Consent need not be transferred in this case because plaintiffs consented to receive promotions and buying assistance from a group of vendors in the cooperative. See <u>Physicians Healthsource</u>, 950 F.3d at 968 (clarifying that the plaintiffs in <u>CE Design</u> and <u>Travel 100 Group, Inc.</u> "had expressly consented to the ability of a group of individuals to send them faxes, not that permission given to one entity could be extended or transferred.")

8

and shall do the same. Based on the provisions of plaintiffs' Member Agreements with DIB, the court concludes that plaintiffs invited advertisements by fax and expressly consented to the faxed advertisements. Indeed, the Member Agreements in this case are stronger than the agreements in the Gorss Motels cases because plaintiffs' agreements specifically discuss DIB's advertising program, which contemplated ads from third-party vendors. The combination of the advertising program and plaintiffs' provision of their fax numbers constitutes express permission to receive fax advertisements.

Plaintiffs make two arguments in response. First, the Seventh Circuit has not expressly adopted the holding of the Eleventh Circuit case, and second, plaintiffs' president David Brunjes testified that he did not consent, and would not consent, to the faxes, and this testimony precludes summary judgment. Regarding the first argument, although the Seventh Circuit has not expressly adopted the Eleventh Circuit's holding, the Seventh Circuit's analysis in Physicians Healthsource is strikingly similar, and there are no discernible conflicts between the two courts' reasoning. As for the second, to preclude summary judgment, there must be an issue of fact that is material, meaning that the fact "might affect the outcome of the suit." Cox v. Hartshorn, 503 F.Supp.2d 1078, 1081 (C.D. Ill. 2007). That Brunjes testified that the faxes were unsolicited, and that Lunada Bay and Bay Hardwood had strict policies against faxes, does not affect the outcome of this case. The testimony about what Brunjes subjectively thought is immaterial because both Bay Hardware and Lunada Bay Hardware had already provided their express permission in the Membership Agreements. See Gorss Motels, 931 F.3d at 1102 (plaintiff's subjective thoughts about the faxes were immaterial for purposes of summary judgment because plaintiff had already consented to the faxes).

9

Defendant's motion for Bay Hardware is even stronger given Davis's phone call seeking permission to send fax advertisements, along with Davis's testimony about DIB's instructions to CMI to send frequent fax advertisements to DIB members. Plaintiffs object that Davis's testimony regarding the phone call is not credible and that her testimony regarding DIB's statements and instructions is inadmissible hearsay. First, "[o]n summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are the jobs for a factfinder." Johnson v. Advocate Health and Hospitals Corp., 982 F.3d 887, 893 (7th Cir. 2018). Consequently, because Davis's testimony is uncontested, plaintiffs' first argument is a nonstarter.

As for plaintiffs' hearsay objections, defendant argues that Davis's testimony is not offered for the truth of the matter asserted, but rather for non-hearsay purposes. Defendant also contends that Davis's testimony relates to her instructions from DIB, which are "akin to a verbal act…because their significance lies in the fact that [the instructions] were made," and that Davis's testimony shows the effect on her as the listener and her understanding of what was authorized. The court agrees with defendant that Davis's testimony is not hearsay, and considers it for non-hearsay purposes. Regardless of the hearsay objections, the evidence of Davis's phone call to Craftwood II and corresponding spreadsheet is admissible as a party admission under F.R.E. 802(d)(2), and further supports the granting of defendant's summary judgment motion regarding the faxes sent to Bay Hardware.

Finally, the court need not address the issue of "lateral veil piercing,"[5] and whether the two entities are effectively the same. Although defendant provides compelling evidence that the

---

[5] The Seventh Circuit's opinion in this case stated that there may be a "lateral piercing of the corporate veil." Craftwood II, Inc. v. Generac Power Systems, Inc., 920 F.3d 479, 482 (7th Cir. 2019). Defendant's counsel was

Craftwood stores behaved as multiple stores in a single chain as opposed to separate legal entities, the court need not reach that issue. Because both plaintiffs executed the same Member Agreement with DIB, they individually consented to receive the subject faxes.

## CONCLUSION

For these reasons, defendant's motion for summary judgment is granted (Doc. 251), and plaintiffs' motion to strike (Doc. 271) is denied.

ENTER:

Robert W. Gettleman
United States District Judge

**DATE: September 13, 2021**

---

unable to locate such a legal theory, and this court struggled to do the same.

11