IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRAFTWOOD II, Inc., a California corporation, d/b/a Bay Hardware; CRAFTWOOD III, Inc., a California corporation, d/b/a Lunada Bay Hardware, individually and as representatives of all others similarly situated, | ) | |
| Plaintiffs, | ) | Case No. 17 C 4105 |
| v. | ) | Judge Robert W. Gettleman |
| GENERAC POWER SYSTEMS, INC., a Wisconsin corporation, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Craftwood II, Inc. and Craftwood III, Inc. ("Craftwood II" and "Craftwood III," respectively, and "plaintiffs," collectively) are California hardware stores that are operated as a family business. In 2017, they filed a one-count putative class action complaint against defendants Generac Power Systems, Inc. (a manufacturer and seller of power equipment like home generators) and Comprehensive Marketing, Inc. ("CMI") (a marketing representative for manufacturers like Generac), alleging that defendants faxed them advertisements promoting Generac's products in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Since then, the case has wound its way through pleadings, phased discovery, summary judgment, and two appeals, and plaintiffs have also dismissed the case against CMI.

Discovery is now complete, and plaintiffs have moved to certify five classes under Fed. Rs. Civ. P. 23(a), (b)(3), and (g). For the reasons below, the court denies the motion.

## BACKGROUND

### The TCPA's Prohibition of Unsolicited Fax Ads

Congress enacted the TCPA in 1991 to "protect[ ] businesses and consumers from intrusive telemarketing communications." McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146, 149 (2025). "Among other restrictions, the TCPA prohibits a business from sending an 'unsolicited advertisement' by fax to a 'telephone facsimile machine.'" Id. (quoting 47 U.S.C. § 227(b)(1)(C)). Unsolicited advertisements "('junk faxes,' as they are called) consume the recipient's paper and ink without his consent and are thus a source of irritation that has given rise to the statutory prohibition." CE Design Ltd. v. King Architectural Metals, Inc., 637 F.3d 721, 723 (7th Cir. 2011).

The TCPA "defines the term 'unsolicited advertisement' to mean 'any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's *prior express invitation or permission*, in writing or otherwise.'" Brodsky v. HumanaDental Ins. Co., 910 F.3d 285, 290 (7th Cir. 2018) (emphasis in original) (quoting § 227(a)(5)). So courts must distinguish solicited faxes from unsolicited faxes. Id. at 291.

As for the latter, the TCPA includes "exceptions to the prohibitions on sending unsolicited faxes, including situations where the sender has an established business relationship with the recipient, the sender obtains the recipient's fax number through some sort of voluntary communication, and where the unsolicited message has 'a notice meeting the requirements under paragraph (2)(D).'" Id. at 290 (quoting § 227(b)(1)(C)(1)-(iii)). The third "notice" requirement is an "opt-out" requirement—the fax must "contain a notice informing the recipient of his or her

ability to avoid future faxes and how to do so." Physicians Healthsource, Inc. v. A-S Medication Sols., LLC, 950 F.3d 959, 964 (7th Cir. 2020) (citing § 227(b)(1)(C)(iii), (b)(2)(D)).

As for solicited faxes, prior express consent "requires some fairly specific and reliable indicia of permission." Craftwood II, Inc. v. Generac Power Sys., Inc., 63 F.4th 1121, 1126 (7th Cir. 2023). It "requires that the consumer understand that by providing a fax number, he or she is agreeing to receive fax advertisements." Id. (cleaned up). The permission "may be written or oral"—but it "must be affirmative" (not "presume[d]"). Id. The Seventh Circuit has further explained: that "[e]vidence of permission to send faxes generally does not establish prior express permission to fax advertisements"; that "permission to receive product information by fax does not grant permission to receive faxed advertisements"; and that "permission to receive a single faxed advertisement does not grant permission to send more faxes on an ongoing basis, unless the permission affirmatively and explicitly gives the advertiser permission to send the faxes on an ongoing basis." Id.

So to sum up, "the TCPA prohibits advertisers from sending advertisements via fax unless they have (1) an established business relationship with the recipient and follow certain requirements, or (2) the recipient's prior express permission or invitation." Physicians Healthsource, 950 F.3d at 967 (emphasis added) (citing § 227(a)(5), (b)(1)(C), (b)(2)(d)).

To give teeth to its prohibitions, the TCPA "provides a private right of action to collect either actual damages or $500 *per violation* in statutory damages." Brodsky, 910 F.3d at 291 (emphasis in original) (citing § 227(b)(3)(B)). Thus, the "consequences for a firm that violates the TCPA can be dire when it is facing not just a single aggrieved person, but a class." Id.

## Factual and Procedural Background

Plaintiffs here seek to represent just such a class, and to hold Generac liable for more than $5 million in statutory damages (along with trebling of those damages) for sending faxes that violate the TCPA. Plaintiffs are operated as a family business by David and Cynthia Brunjes. They established Craftwood II (which is operated by the Brunjes' daughter, Diana Newton, and another manager) in 2009, and Craftwood III (which is operated by Newton and a different manager) in 2013. Both stores are part of the Do It Best (DIB) hardware industry cooperative and wholesaler. By joining the DIB cooperative, hardware stores receive access to better prices from vendors, and also advertising and buying assistance.

Generac is one of many companies that supplies goods to the DIB cooperative for purchase by those hardware stores that belong to the cooperative. Those stores then sell Generac's products to the public. Generac had an agreement with CMI—an independent sales and marketing representative that assisted Generac and other DIB vendors—to get their products from the vendor to the market. As part of its role, CMI sent out faxes to DIB-member hardware stores advertising deals on Generac's products. Three of those faxes went to plaintiffs—one sent in July 2016 to Craftwood II, and one sent in February 2017 to both stores.

Not long thereafter, in May 2017, plaintiffs sued Generac and CMI, claiming that they violated the TCPA's bar on advertising by fax. Plaintiffs requested individual and class action relief, including statutory damages of $500 for each violation, treble damages for any intentional violation, injunctive relief, and attorneys' fees and costs.

This court thereafter dismissed the case, finding that the plaintiffs lacked standing to bring their claim. See Craftwood II, Inc. v. Generac Power Sys., Inc., No. 17 C 4105, 2018 WL

11468610, at *2 (N.D. Ill. Aug. 1, 2018). But the Seventh Circuit reversed and remanded, allowing the case to proceed. See Craftwood II, Inc. v. Generac Power Sys., Inc., 920 F.3d 479, 483 (7th Cir. 2019).

On remand, discovery proceeded in phases, including one on plaintiffs' individual (non-class action) claims. In January 2020, the court dismissed the case against CMI based on plaintiffs and CMI's stipulation. This court thereafter granted Generac summary judgment on plaintiffs' individual claims against Generac, based on Gerenac's defense that the recipients gave prior express permission. See Craftwood II, Inc. v. Generac Power Sys., Inc., No. 17 C 4105, 2021 WL 4146879, at *3-5 (N.D. Ill. Sept. 13, 2021). On appeal, however, the Seventh Circuit found that there was a dispute of fact as to prior express permission, and thus reversed and remanded. See Craftwood II, 63 F.4th at 1126-29. So the case returned to discovery.

After discovery closed, plaintiffs moved to certify five separate classes. According to plaintiffs, between 2013 and 2017, "more than 40,000 Generac ads [were] faxed to over 9,300 recipients in at least 50 fax blast campaigns." Plaintiffs assert that: all these faxes are subject to the TCPA; all "promote Generac's products and were sent in the same manner through the same marketing agent [CMI], who in turn used the same third-party fax-blasting service [WestFax, Inc.]"; and all "lack proper opt-outs."

Plaintiffs further contend that all "class members are entitled to the same relief," and that "[u]nlike cases involving individualized consent, Generac's theories of permission are sourced from common proof." "Permission was obtained, if at all, in only two ways": "by collecting 'line cards' containing opt-in language"; or "through a 'special project' where CMI employee Sheri Davis supposedly called certain hardware stores [in May 2012] to request express

permission to send fax ads." Plaintiffs contend that because Generac violated the TCPA in a uniform way, the court should certify the five classes and appoint plaintiffs and their counsel as class representatives.

Shortly after plaintiffs filed their motion to certify, they filed an amended complaint (the operative one in this case) to amend the class definition in the original complaint to conform to the five classes plaintiffs propose in their motion to certify. Generac has since answered the amended complaint, and has filed an opposition to the motion to certify—to which plaintiffs have replied, Generac has sur-replied, and plaintiffs have responded to the sur-reply.

## DISCUSSION

### Class Actions under Fed. R. Civ. P. 23

A class action is "a lawsuit in which the court authorizes a single person or a small group of people to represent the interests of a larger group." Anderson v. Weinert Enters., Inc., 986 F.3d 773, 776 (7th Cir. 2021) (citation omitted). It is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011) (citation omitted). To justify departing from the usual rule, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Id. at 348-49 (cleaned up). Ultimately, whether a class action is appropriate is governed by a two-step analysis under Fed. R. Civ. P. 23.

First, the action must satisfy "four threshold requirements" under Rule 23(a): "(1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and

adequately protect the interests of the class)." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997) (cleaned up).

Second, the action must satisfy Rule 23(b), which sets forth further "requirements for class actions depending on, among other things, the type of relief sought." Chicago Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago, 797 F.3d 426, 433-34 (7th Cir. 2015). In particular, the action must fall into at least one of three categories:

> (1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because of the risk that the class adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests),
>
> (2) an action seeking final injunctive or declaratory relief, or
>
> (3) a case in which the common questions predominate and class treatment is superior.

Spano v. The Boeing Co., 633 F.3d 574, 583 (7th Cir. 2011).

In addition to the Rule 23(a) and (b) requirements, a class must also "be sufficiently definite" such "that its members are ascertainable." Ploss as Tr. for Harry Ploss Tr. DTD 8/16/1993 v. Kraft Foods Grp., Inc., 431 F. Supp. 3d 1003, 1010 (N.D. Ill. 2020) (cleaned up).

Plaintiffs, as the parties seeking class certification here, "bear[ ] the burden of demonstrating that certification is proper by a preponderance of the evidence." Gorss Motels, Inc. v. Brigadoon Fitness, Inc., 29 F.4th 839, 843 (7th Cir. 2022). In assessing whether they have met their burden, the court is not limited to the complaint's allegations and should "make whatever factual and legal inquiries are necessary under Rule 23." Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 676 (7th Cir. 2001). In the end, the court has broad discretion to decide whether to grant class certification. Keele v. Wexler, 149 F.3d 589, 592 (7th Cir. 1998).

Here, plaintiffs seek to have certified the following classes:

**Class 1:** All subscribers of telephone numbers to which Generac Systems, Inc. (through Comprehensive Marketing, Inc.), sent facsimile transmissions of material that discusses, describes, or promotes Generac property, goods, or services between June 14, 2013 and May 9, 2017, on the dates identified in Exhibit 1 to the Berlin Declaration concurrently filed.

**Class 2:** All subscribers of telephone numbers, excluding users of online fax services, to which Generac Systems, Inc. (through Comprehensive Marketing, Inc.), sent facsimile transmissions of material that discusses, describes, or promotes Generac property, goods, or services between June 14, 2013 and May 9, 2017, on the dates identified in Exhibit 1.

**Class 3:** All subscribers of telephone numbers excluding those subscribers of facsimile telephone numbers input by Sheri Davis on column H of Exhibit 4, to which Generac Systems, Inc. (through Comprehensive Marketing, Inc.), sent facsimile transmissions of material that discusses, describes, or promotes Generac property, goods, or services between June 14, 2013 and May 9, 2017, on the dates identified in Exhibit 1.

**Class 4:** All subscribers of telephone numbers, excluding users of online fax services, and excluding those subscribers of facsimile telephone numbers input by Sheri Davis on column H of Exhibit 4, to which Generac Systems, Inc. (through Comprehensive Marketing, Inc.), sent facsimile transmissions of material that discusses, describes, or promotes Generac property, goods, or services between June 14, 2013 and May 9, 2017, on the dates identified in Exhibit 1.

**Class 5:** All subscribers of telephone numbers input by Sheri Davis on column H of Exhibit 4 to which Generac Systems, Inc. (through Comprehensive Marketing, Inc.), sent facsimile transmissions of material that discusses, describes, or promotes Generac property, goods, or services between June 14, 2013 and May 9, 2017, on the dates identified in Exhibit 1.

Generac opposes certifying any of the classes. The court thus turns to the parties' arguments.

Whether Rule 23(a)'s Requirements are Met

Numerosity

Plaintiff must show that their proposed classes are "so numerous that joinder of all members is impracticable." Anderson, 986 F.3d at 777 (cleaned up). Seventh Circuit "cases have recognized that a forty-member class is often . . . sufficient to meet the numerosity

requirement." Id. (cleaned up). Yet a forty-member-plus proposed class "does not guarantee numerosity." Id. At bottom, it "is not the number of class members alone but the practicability of joinder" that matters. Id. To determine whether the joinder would be impractical, courts evaluate "the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute." Id. (citation omitted).

Plaintiff argues here that "[a]ll classes are numerous"—with the numbers for each class falling between 271 (for Class 5) and 9,403 (for Class 1). Generac does not dispute this.

The court finds that the numerosity requirement is met. As for the nature of the action, "[c]lass certification is normal in litigation under § 227, because the main questions, such as whether a given fax is an advertisement, are common to all recipients." Ira Holtzman, C.P.A., & Assocs. Ltd. v. Turza, 728 F.3d 682, 684 (7th Cir. 2013). As for the other factors, the number of members in the proposed classes well exceed the 40 that courts have found is sufficient, the individual claims are likely relatively modest, and there is no suggestion that the location of class members is in dispute.

Commonality and Typicality

Rule 23(a)'s "commonality and typicality requirements . . . tend to merge." Wal-Mart, 564 U.S. at 349 n.5 (citation omitted). That is because "both serve as guideposts for determining whether" maintaining a "class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Id. (citation omitted).[1]

[1] The commonality and typicality requirements "therefore also tend to merge with the adequacy-

As for commonality, the plaintiff must show that "there are questions of law or fact common to the class." Id. at 349 (quoting Fed. R. Civ. P. 23(a)(2)). This means that the plaintiff must show that the class members' claims "depend upon a common contention." Id. at 350. "A question satisfies this commonality requirement if the same evidence will suffice for each member to make a *prima facie* showing on the question or the issue is susceptible to generalized, class-wide proof, and determination of the question's truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Schroeder v. Progressive Paloverde Ins. Co., 146 F.4th 567, 573 (7th Cir. 2025) (cleaned up). "[E]ven a single common question will do." Wal-Mart, 564 U.S. at 359 (cleaned up). In determining whether there are common questions, the "district court should begin by identifying the elements of the plaintiff's various claims" because "[o]nly by properly circumscribing the claims and breaking them down into their constituent elements can a district court decide which issues are common." Simpson v. Dart, 23 F.4th 706, 713-14 (7th Cir. 2022) (citation omitted).

Here, plaintiff's sole count is for a violation of the TCPA based on fax ads. To establish this claim, plaintiffs must show that Generac used a telephone facsimile machine, a computer or other device to send one or more faxes to plaintiffs' fax machines, and that the faxes sent contained materials advertising the commercial availability or quality of any property, goods, or services. See Craftwood II, 63 F.4th at 1124; Gorss Motels, 29 F.4th at 842; 47 U.S.C. §§ 227(a)(5) and (b)(1)(C). Generac will then bear "the burden of proving consent or an existing

---

of-representation requirement." Id. (citation omitted). But, as explained further below, the adequacy requirement raises additional concerns.

business relationship" as an affirmative defense. W. Loop Chiropractic & Sports Inj. Ctr., Ltd. v. N. Am. Bancard, LLC, No. 16 C 5856, 2018 WL 4762333, at *8 (N.D. Ill. May 16, 2018).

Plaintiffs argue that there are several common questions of law and fact here. Generac does not meaningfully dispute this, and the court agrees. At least one common question for each class, for example, is whether the faxes are advertisements. See Holtzman, 728 F.3d at 684 (one of the "the main questions" in a TCPA fax case is "whether a given fax is an advertisement," which is "common to all recipients"). And determining the answer to this question will require the same evidence—the faxes themselves and testimony from sales and marketing employees—and will resolve an issue that is central to the validity of each one of the claims in a single stroke. See Chicago Tchrs. Union, 797 F.3d at 434 ("What matters to class certification . . . is . . . the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." (emphasis in original) (citation omitted)).

Moving on to typicality, to be typical, the plaintiff's claims must have "the same essential characteristics" as the class members' claims. Muro v. Target Corp., 580 F.3d 485, 492 (7th Cir. 2009) (citation omitted). For example, a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." Keele, 149 F.3d at 595 (citation omitted). "Typical does not mean identical, and the typicality requirement is liberally construed." Kurgan v. Chiro One Wellness Ctrs. LLC, No. 10-cv-1899, 2014 WL 642092, at *7 (N.D. Ill. Feb. 19, 2014) (citation omitted). It requires "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." Spano, 633 F.3d at 586. What is more,

typicality focuses on the defendant's actions leading to the alleged violation and not on possible "particularized defenses [the defendant] might have against certain class members." Wagner v. NutraSweet Co., 95 F.3d 527, 534 (7th Cir. 1996).

Plaintiffs argue here that their claims are typical for each proposed class. Generac again does not meaningfully dispute this, and the court again agrees with plaintiffs. Plaintiffs' claim and the claims of the Class 1 members (every telephone number that received a fax) have the same essential characteristics and arise from the same event, practice, or course of conduct—namely, Generac creating fax campaigns by hiring CMI to implement promotional activities, and CMI in turn using WestFax to transmit the faxes to the class members. Further, neither Craftwood II nor Craftwood III used online fax services (Class 2 excludes users of online fax services), Craftwood III is not on the Sheri Davis list (Classes 3 and 4 exclude any number that was on the Sheri Davis list, including Craftwood II's number), and Craftwood II is on the Sheri Davis list (Class 5 includes only those numbers on the Sheri Davis list).

In sum, the court finds that the commonality and typicality requirements are met.

Adequacy

The adequacy requirement concerns whether "representatives will fairly and adequately protect the interests of the class." Amchem, 521 U.S. at 613 (cleaned up). Plaintiffs argue that the class representatives—David Brunjes and Diane Newton—will adequately protect the interests of the class because they are experienced businesspeople and are committed to, and are actively involved in, the case. Plaintiffs also contend that their counsel is experienced in complex class actions—including TCPA class actions—and have devoted significant resources to this case.

Generac does not dispute these assertions. It instead argues that plaintiffs' representatives are inadequate because they provided conflicting testimony on whether there was permission to receive the faxes, and according to Generac: "a class representative with credibility problems, or who would require undue attention to rebutting an individual defense, cannot satisfy Rule 23(a)(4)." (Citing CE Design Ltd. v. King Architectural Metals, Inc., 637 F.3d 721, 727-28 (7th Cir. 2011)).

In CE Design, the court explained that typicality and adequacy are closely related, and that "[a] class is disserved if its representative's claim is not typical of the claims of the class members, for then if his claim fails, though claims of other class members may be valid, the suit will at the least be delayed by the scramble to find a new class representative." 637 F.3d at 724. But, the court noted, typicality "should be determined with reference to the [defendant]'s actions, not with respect to particularized defenses [the defendant] might have against certain class members." Id. at 725 (citing Wagner, 95 F.3d at 534). The same, however, is not true for determining adequacy. Id. According to the court, "[t]he presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may . . . bring into question the adequacy of the named plaintiff's representation." Id. at 726 (citation omitted). And relatedly, "[a] named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative." Id. The court thus explained that a representative in a TCPA class action "cannot be an adequate representative of the class of unconsenting recipients of [defendant]'s faxes if it is subject to a defense that couldn't be sustained against other class members, . . . or if [the

representative] is not credible on the key question of whether [it] invited or permitted the faxed advertisements about which it now complains." Id. at 725.

Generac does not argue here that the permission defense is peculiar to plaintiffs. Indeed, it states that "whether Plaintiffs (or putative class members) provided prior express invitation or permission for the faxes is the central issue." (Emphasis added). Generac instead argues that Brunjes and Newton are simply not credible on that issue. Starting with Brunjes, Generac asserts that he testified at a deposition in this case that he could not recall if he had a call with Sheri Davis in May 2012 in which he consented to the faxes at issue (Generac's position is that Davis called Craftwood II in May 2012 and obtained verbal consent to send fax ads). (Citing Brunjes's Dep. Tr. at 212). But then, later in the same deposition, Brunjes explained that he could in fact definitively say that the call never happened because there was a company-wide policy that no employee could consent to faxed promotions. (Quoting id. at 243-44.). And, Generac continues, Brunjes also testified in depositions in other litigations (the "Senco" and "Interline" cases[2]) that Craftwood asked suppliers to fax materials and that he has given out his number for faxes about promotions.

As for Newton, Generac contends that she also testified at deposition that she did not know or recall if she received a call in May 2012 from Davis about faxed ads, but after consultation with her attorneys, changed her story and said that nobody would have given Davis their fax number due to a store policy against providing consent to faxes.[3] Generac further

[2] Craftwood Lumber Co. v. Senco Brands, Inc., No. 14-6866 (N.D. Ill.); Craftwood Lumber Co. v. Interline Brands, Inc., No. 11-4462 (N.D. Ill.).

[3] Generac appears to have not provided with its brief a copy of the page of the deposition (pg. 182) where she allegedly changed her story, but it was provided in early filings in this case.

contends that Newton later provided a declaration confirming her policy testimony. Yet, Generac argues, she later testified at another deposition that in preparing that declaration, she spoke to no one about consent and never asked employees if they had provided the stores' fax number.

Even the Seventh Circuit, Generac goes on, "observed the 'shifting and curving' nature of their testimony." (Quoting Craftwood II, 63 F.4th at 1129 n.6). Generac asserts that their "credibility issues go to the heart of *the* key question: whether the faxes were unsolicited or sent with prior express permission." (Emphasis by Generac). If a jury did not believe their testimony on permission, Generac contends, "the absent class members' claims would be seriously compromised." Generac thus concludes that Brunjes and Newton are inadequate representatives.

The court disagrees: the testimony Generac points to does not create "serious credibility problems." CE Design, 637 F.3d at 726. The CE Design court explained that defendants should not "try to derail legitimate class actions by conjuring up trivial credibility problems." According to the court: "few plaintiffs come to court with halos above their heads; fewer still escape with those halos untarnished." Id. at 728 (quoting Dubin v. Miller, 132 F.R.D. 269, 272 (D. Colo. 1990)). So "[f]or an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." Id. (quoting Dubin, 132 F.R.D. at 272).

Generac has not provided any such evidence. To be sure, both Brunjes and Newton testified in their depositions that they did not recall a phone call with Davis in May 2012—many years before their depositions—and they both later explained that they thought that the call would not have happened because there was a policy at the respective stores of not giving out their fax numbers for faxed ads. But these are not inconsistent positions or changed stories; they are clarifications or amplifications of testimony. And it is not uncommon for witnesses in depositions in federal court—which can last up to seven hours—to clarify or add gloss to their testimony in the deposition as it proceeds or in later declarations. All this may well be fodder for cross-examination at trial, but the court cannot find that it "severely undermin[es] plaintiff[s'] credibility." CE Design, 637 F.3d at 726.

The same goes for Brunjes's testimony in the prior litigations. His testimony in the Senco case appears to have been related to another company (Craftwood Lumber)—not Craftwood II or Craftwood III—and to product information—not advertisements. See Craftwood II, 63 F.4th at 1126 ("permission to receive product information by fax does not grant permission to receive faxed advertisements"). And although his testimony in the Interline case does appear to relate to faxed ads, his testimony appears to have again been related to Craftwood Lumber, and it does not appear to have suggested that he "affirmatively and explicitly g[ave] the advertiser permission to send the faxes on an ongoing basis." See id. ("permission to receive a single faxed advertisement does not grant permission to send more faxes on an ongoing basis, unless the permission affirmatively and explicitly gives the advertiser permission to send the faxes on an ongoing basis").

In short, the court finds that Generac has not provided "evidence so severely undermining plaintiff[s'] credibility that a fact finder might reasonably focus on [their] credibility, to the detriment of the absent class members' claims." CE Design, 637 F.3d at 728. And because Generac does not meaningfully contest that the representatives and counsel will otherwise adequately represent the class, the court finds that the adequacy requirement is met. As a result, the court finds that plaintiffs have satisfied the four Rule 23(a) requirements.

Whether this case falls within Rule 23(b)(3)

Plaintiffs assert that certification is appropriate under Rule 23(b)(3). Rule 23(b)(3) class actions are designed to "cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Amchem, 521 U.S. at 615 (cleaned up). Rule 23(b)(3) has two requirements: (1) predominance—that "the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) superiority—"that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Predominance

"Rule 23(b)(3)'s predominance requirement builds on commonality," but is "far more demanding." Svoboda v. Amazon.com Inc., 168 F.4th 956, 961 (7th Cir. 2026) (cleaned up). "While commonality requires that common questions exist, predominance requires that they also predominate" over individual questions. Id. As explained above for commonality, "a common question is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof." Gorss Motels, 29 F.4th at

844. "An individual question is one where members of a proposed class will need to present evidence that varies from member to member." Id. at 843-44.

As with commonality, in determining predominance, the court must identify the elements of the claim and the proof necessary for each element. Svoboda, 168 F.4th at 961. Again, to establish their TCPA claim, plaintiffs will have to show that Generac used a device to send one or more faxes to plaintiffs' fax machines, and that the faxes were advertisements. At least one common issue here, as the court has already found, is whether the faxes are advertisements. Plaintiffs contend that there are still many more—like whether Generac is directly or vicariously liable for its TCPA violations (since WestFax via CMI sent the faxes), and what the measure of damages is.

Plaintiffs also assert that other common issues include whether the prior express permission exception and the established business relationship exception apply in this case. Generac disagrees, focusing on the lack of commonality as to the prior express permission exception, which Generac argues sinks plaintiffs' bid for class certification. Again, both exceptions are affirmative defenses for which Generac will ultimately bear the burden of proof. W. Loop Chiropractic, 2018 WL 4762333, at *8. Nevertheless, the Seventh Circuit has recognized that "predominance of individual issues necessary to decide an affirmative defense" can in fact "preclude class certification"—at least where the defense implicates a key issue that requires resolution before the proposed class can recover on its claim. Gorss Motels, 29 F.4th at 845 (citation omitted).

Gorss Motels and Determining Permission on Class-Wide Basis

The parties agree that Gorss Motels is particularly relevant here, and both argue that it supports their competing positions on predominance. The plaintiff in Gorss Motels, like plaintiffs here, brought a class action under the TCPA on behalf of a class of recipients of allegedly unsolicited fax ads. Id. at 840-41. The district court declined to certify the class, finding that the plaintiff had failed to meet its burden to show predominance. Id. at 841. In particular, the district court found that whether the faxes there were solicited was key to recovery under the TCPA, and because the defendant had assembled the list of recipients in many different ways, "the case presented the 'specter of unlimited mini-trials' to determine the precise relationship between sender and recipients so that the court could determine whether prior express permission to send the faxes had been granted in each instance." Id. at 842.

The Seventh Circuit affirmed. In so doing, it explained that "[t]o decide predominance, the court must understand what the plaintiffs will need to prove and must evaluate the extent to which they can prove their case with common evidence"—it "must walk a balance between *evaluating* evidence to determine whether a common question exists and predominates, *without weighing* that evidence to determine whether the plaintiff class will ultimately prevail on the merits." Id. at 845 (emphasis in original) (citation omitted). And that very same analysis, the court continued, "applies not only to the elements that plaintiffs must prove but also to affirmative defenses like prior express permission." Id. The court also observed that the district court had correctly found that the issue "of whether the fax advertisement was sent without prior express permission was the key issue to be resolved in order for the proposed class to recover under the" TCPA, and that the pressing "question for class certification purposes" was

therefore "whether resolving this key issue is susceptible to generalized, class-wide proof." Id. at 844.

In answering that question, the court first explained that the permission issue "might be amenable to class-wide proof." Id. For example, the court noted, permission might be amenable to class-wide proof where it was "given by some uniform means such as identical product registration forms or standardized end-user licensing agreements," because "permission, or lack thereof," would be "ascertainable by examining" those registrations and agreements. Id. As another example, permission might also be amenable to class-wide proof "where the fax sender purchased a contact list from a third-party vendor and made no attempt to seek permission from any of the recipients before sending the fax advertisement." Id.

Yet in "other instances," the court went on, permission "must be decided on an individualized basis." Id. As an example, the court pointed to Brodsky v. HumanaDental Ins. Co., 910 F.3d 285 (7th Cir. 2018), where "the plaintiff had a market agreement with the fax sender in which he agreed that the sender could communicate with him by fax, raising the possibility that the plaintiff consented to receipt of the disputed fax." Id. So the question of what sufficed for consent in Brodsky was "central, and it [was] likely to vary from recipient to recipient . . .,' especially because it was unclear what agreements the sender might have had with the other recipients that the plaintiff sought to represent." Id. (quoting Brodsky, 910 F.3d at 291).

With these guideposts in place, the court turned to the case before it, ultimately holding that the district court did not err in finding that the case was not one that was amenable to class-wide proof. The defendant, the court explained, had obtained the fax numbers "in multiple

ways"—collecting them through franchise agreements that were not uniform among fax recipients, through a purchasing network, through oral permission or badge swiping at trade conventions, through lists of past or present customers, or through "some combination of these and other sources." Id. at 844-45. And it had "made more than vague assertions about prior permission": "it provided specific evidence about the various relationships, contracts, and personal contacts that it had with the fax recipients, necessitating individualized analysis of prior express permission." Id. at 845. Because the defendant's "claim of permission was not speculative, vague or unsupported," the court held that the district court could properly "conclude that class-wide analysis of the permission issue would not be feasible." Id. at 848-49.

In so holding, moreover, the court rejected the plaintiff's argument that denying certification was improper since the defendant had failed to prove that any single recipient actually consented. Id. at 845. According to the court, "it is not the final merits of the permission inquiry that matter for Rule 23(b)(3) purposes; it is the method of determining the answer . . . that drives the predominance consideration." Id. And the district court had "acted within its discretion in finding that [the plaintiff], which ha[d] yet to propose a class-wide method of resolving this issue, failed to meet its burden under the predominance standard." Id. at 848.

Whether the Permission Issue in the Instant Case is Amenable to Class-wide Proof

Plaintiffs argue that the permission issue here is like those that the Gorss Motels court discussed were amenable to class-wide proof. According to plaintiffs, "Generac can point to only two ways CMI allegedly sought prior express permission to send faxed ads": (1) through "line cards," which were handouts that CMI distributed to "hardware stores on a routine basis,"

which identified the vendors that CMI worked with, and which included written instructions to opt-in to receiving promotions for Generac by fax; and (2) through Sheri Davis's "special project," "where she called a list of hardware stores and asked for permission to send fax promotions." And "[b]oth ways require Generac to put forth common sources of proof": (1) for the line cards, "the language of the line card itself and CMI's records of completed and returned line cards"; and (2) for Davis's special project, Davis's testimony. The permission issue here, plaintiffs conclude, is thus "amenable to class-wide proof." (Quoting Gorss Motels, 29 F.4th at 844).

Generac disagrees. It argues that the permission issue must be decided on an individualized basis. According to Generac, like the defendant in Gorss Motels, Generac has presented evidence that CMI obtained fax numbers "in multiple ways," and has provided "specific evidence about the various relationships, contracts, and personal contacts that [CMI] had with the fax recipients." (Quoting Gorss Motels, 29 F.4th at 844). Indeed, Generac argues: "CMI's employees testified they obtained stores' fax numbers, along with prior express permission, during in-person visits, on the phone, and at tradeshows, over the course of years or decades-long relationships"; "[s]tores submitted line cards to CMI, in a multitude of ways, and requested fax promotions"; and "CMI memorialized consent by retaining fax numbers in its database." All this, Generac argues, "is corroborated by 144 declarations" from fax recipients.

In reply, plaintiffs assert that "Generac has not pointed to any ***individualized document*** in which, on Generac's behalf, CMI asked for, and a customer gave, permission." (Emphasis by plaintiffs). "Outside [of] one special project and identical line cards," plaintiffs contend, no sales representative "could identify a single document indicating [that] a single hardware store

has provided prior express permission on an ongoing basis." That is not surprising, plaintiffs argue, given CMI's Rule 30(b)(6) corporate witness's "binding admission" that CMI's salespeople, aside from the Sheri Davis list, did not as a "general rule" ask for permission to send faxes. And, plaintiffs assert, CMI's "binding" testimony "cannot be replaced with snippets of other employee testimony," and even if it could, "the 'permission' CMI believed it received" was implied and thus cannot be "prior express permission under Seventh Circuit law." What is more, plaintiffs further argue, the declarations are unreliable and were obtained through deceptive tactics.

The court finds that plaintiffs have failed to show that the permission issue is amenable to class-wide proof. For starters, there is evidence here that, like in Gorss Motels, the fax numbers here were obtained in a variety of ways—directly from businesses, from sales calls, from trade shows, and from cooperatives. Plaintiffs do not dispute this. This evidence supports that an "individualized analysis of prior express permission" will be required. Gorss Motels, 29 F.4th at 845; Craftwood Lumber Co. v. OmniMax Intll LLC, No. 21-CV-01768, 2024 WL 6864194, at *1 (N.D. Ill. July 10, 2024) (quoting Gorss Motels, denying class certification in TCPA junk fax case, and explaining that "defendant presented evidence that it obtained the fax numbers of the proposed class in multiple ways").

Generac has also provided "more than vague assertions about prior permission." Gorss Motels, 29 F.4th at 844. For example, it has provided testimony from multiple CMI employees suggesting that CMI often obtained verbal agreements to send fax ads, and that if a store conveyed express permission, CMI would put the store's fax number into a CMI database. See id. at 848 (explaining that the defendant provided evidence that "some of the recipients attended

trade shows where they provided their contact information, including fax numbers, to vendors at those events after requesting sales materials"); see also Craftwood II, 63 F.4th at 1126 (explaining that permission may be "oral" (cleaned up)).

The court, moreover, disagrees with plaintiffs' contention that this testimony should be disregarded because Generac is "bound" by CMI's Rule 30(b)(6) corporate witness's "binding admission" that CMI's salespeople did not as a "general rule" ask for permission to send fax ads. For one thing, plaintiffs read too much into the "general rule" testimony. Indeed, that testimony appears to be about whether salespeople kept "notes" that "indicated" that a hardware store gave permission—not whether salespeople in fact asked for permission. And CMI's corporate witness testified elsewhere that salespeople would seek to get customers permission to send fax promotions. Shortly following the "general rule" testimony, for example, the witness was asked whether he could "identify a record of any phone call that CMI had with a hardware store where the hardware store specifically gave permission for CMI to send fax ads or promotions generally," and he testified that although he could not "identify a specific one, . . . it happened many times."

For another thing, even if CMI's corporate testimony could be interpreted in the way that plaintiffs suggest (and it could also be considered Generac's corporate testimony), that would not bar Generac from relying on other witness testimony. That is because a Rule 30(b)(6) designee's testimony is not a judicial admission that binds the corporation. A.I. Credit Corp. v. Legion Ins. Co., 265 F.3d 630, 637 (7th Cir. 2001) (citation omitted). To the contrary, Rule 30(b)(6) testimony is "evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes." Id. (citation omitted); see also Cuff v. Trans States

Holdings, Inc., 816 F. Supp. 2d 556, 559 (N.D. Ill. 2011) (explaining that "a business entity may produce evidence that supplements or is contrary to its Rule 30(b)(6) deposition testimony").

Generac has also provided over one hundred declarations from hardware stores, in which the declarants state that the stores provided express permission for CMI to provide them with fax ads. See Gorss Motels, 29 F.4th at 848 (explaining that the defendant "also identified hundreds of recipients with whom it had prior business arrangements that would have to be examined individually to assess permission to receive fax advertisements"); OmniMax, 2024 WL 6864194, at *1 ("The defendant also presented evidence that at least one customer, ABC Supply, gave the defendant prior express permission to send facsimile advertisements.").

As noted above, plaintiffs argue that the declarations were obtained through deception and that they are unreliable. To that end, plaintiffs assert that two of the declarants (McDaniels and Neumann) testified in depositions that they remember little to nothing about signing the declarations, and that one of them (Neumann) testified that he likely signed the declaration because the majority owner of his store was probably not at the store at the time, and that he likely signed without reading the document. But neither declarant suggests that they were tricked into signing, and both signed many years before their depositions—so it is not surprising that their memories have faded. While Neumann's testimony suggesting that he signed the document without reading it is concerning, the court finds that plaintiffs have not established that the other declarations were the product of deceptive tactics or are so unreliable that they cannot be considered for purposes of class certification.

Finally, the court finds unpersuasive plaintiffs' argument that Generac has not "identif[ied] a single putative class member that CMI asked—and a hardware store that gave—

prior express permission to receive fax advertisements on an ongoing basis." Again, as Gorss Motels makes clear, Generac need not "prove that any single recipient consented": "it is not the final merits of the permission inquiry that matter for Rule 23(b)(3) purposes; it is the method of determining the answer . . . that drives the predominance consideration." 29 F.4th at 845; see also OmniMax, 2024 WL 6864194, at *2 (denying class certification and explaining that "[c]ontrary to the plaintiff's contention, the failure of the defendant and its representatives to identify evidence of prior express permission during discovery does not render the issue of prior express permission a common one" (discussing Gorss Motels)). And in light of the various "sources of possible permission that [Generac has] presented here, such as trade show interactions, membership in a purchasing network, and prior communications during business dealings, it becomes . . . apparent that . . . individual questions predominate[ ]." Gorss Motels, 29 F.4th at 849.

In sum, the court concludes "that class-wide analysis of the permission issue would not be feasible." Id. at 849. Because the court finds that plaintiffs have failed to show that common issues predominate, it need not address the parties' remaining arguments. See Priddy v. Health Care Serv. Corp., 870 F.3d 657, 660 (7th Cir. 2017) ("The plaintiff bears the burden of proving by a preponderance of the evidence all necessary prerequisites to the class action.").

## CONCLUSION

For the reasons described above, plaintiffs' motion for class certification [355] is denied. This matter is set for an in person hearing on September 29, 2026, at 10:45 a.m. to discuss moving forward with this case.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: September 9, 2026**